UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| JUDY LOPEZ, § | | |
| § | | |
| Plaintiff, § | | |
| v. § | | CIVIL ACTION NO. |
| § | | |
| MICHAEL J. ASTRUE, § | | SA-07-CV-0132 FB (NN) |
| Commissioner of the Social § | | |
| Security Administration, § | | |
| § | | |
| Defendant. § | | |

MEMORANDUM AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE

TO:   Honorable Fred Biery
      United States District Judge

### Introduction

Plaintiff Judy Lopez brought this action for judicial review of the final decision of the Commissioner of the Social Security Administration (the Commissioner), determining that Lopez is not disabled for the purposes of the Social Security Act (the Act) and denying Lopez's applications for Disability Income Benefits (DIB) and Supplemental Social Security Insurance (SSI) benefits. Lopez asks the district court to reverse the Commissioner's decision and to render judgment in her favor. In the alternative, Lopez asks the district court to reverse the decision and remand the case for further proceedings.

After considering Lopez's brief in support of her complaint,[1] the brief in support of the

---

[1] Docket entry # 17.

Commissioner's decision,[2] the record of the SSA proceedings, the pleadings on file, the applicable case authority and relevant statutory and regulatory provisions, and the entire record in this matter, I recommend affirming the Commissioner's decision.

I have jurisdiction to enter this memorandum and recommendation under 28 U.S.C. § 636(b) and this district's general order, dated July 17, 1981, referring for disposition by recommendation all cases where a plaintiff seeks review of the Commissioner's denial of the plaintiff's application for benefits.[3]

## Jurisdiction

The district court has jurisdiction to review the Commissioner's final decision as provided by 42 U.S.C. §§ 405(g), 1383(c)(3).

## Administrative Proceedings

Based on the record in this case, Lopez exhausted her administrative remedies prior to filing this action in federal court. Lopez applied for DIB and SSI benefits on November 17, 2003, alleging disability beginning October 10, 2003.[4] The Commissioner denied the applications initially and on reconsideration.[5] Lopez then asked for a hearing before an ALJ.[6] A hearing was held on October 3, 2005.[7] The ALJ issued a decision on February 24, 2006, concluding that

---

[2]Docket entry # 18.

[3]*See* Local Rules for the Western District of Texas, appx. C, p. 10.

[4]SSA record, pp. 60 & 396.

[5]*Id*. at pp. 30-1, 399 & 407.

[6]*Id*. at p. 45.

[7]*Id*. at pp. 419-49.

2

Lopez is not disabled within the meaning of the Act.[8]  Lopez asked for review of the decision. The Appeals Council denied the request for review on December 20, 2006 after determining that no basis existed for reviewing the ALJ's decision.[9]  The ALJ's decision became the final decision of the Commissioner for the purpose of the district court's review pursuant to 42 U.S.C. § 405(g).  Lopez filed this action seeking review of the Commissioner's decision on February 12, 2007.[10]

## Issue Presented

> Is the ALJ's decision that Lopez is not under a "disability," as defined by the Act, supported by substantial evidence and does the decision comport with relevant legal standards?

## Analysis

### A. Standard of Review

In reviewing the Commissioner's decision denying disability benefits, the reviewing court is limited to determining whether substantial evidence supports the decision and whether the Commissioner applied the proper legal standards in evaluating the evidence.[11]  "Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[12]  Substantial evidence "must

---

[8]*Id*. at pp. 22-9.

[9]*Id*. at p. 5.

[10]Docket entry # 3.

[11]*Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995); 42 U.S.C. §§ 405(g), 1383(c)(3).

[12]*Villa v. Sullivan*, 895 F.2d 1019, 1021-22 (5th Cir. 1990) (quoting *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983)).

do more than create a suspicion of the existence of the fact to be established, but 'no substantial evidence' will be found only where there is a 'conspicuous absence of credible choices' or 'no contrary medical evidence.'"[13]

If the Commissioner's findings are supported by substantial evidence, then they are conclusive and must be affirmed.[14] In reviewing the Commissioner's findings, a court must carefully examine the entire record, but refrain from reweighing the evidence or substituting its judgment for that of the Commissioner.[15] Conflicts in the evidence and credibility assessments are for the Commissioner and not for the courts to resolve.[16] Four elements of proof are weighed by the courts in determining if substantial evidence supports the Commissioner's determination: (1) objective medical facts, (2) diagnoses and opinions of treating and examining physicians, (3) the claimant's subjective evidence of pain and disability, and (4) the claimant's age, education and work experience.[17]

**1. Entitlement to Benefits**

Every individual who meets certain income and resource requirements, has filed an application for benefits, and is under a disability, is eligible to receive benefits.[18] The term

---

[13]*Abshire v. Bowen*, 848 F.2d 638, 640 (5th Cir. 1988) (quoting *Hames*, 707 F.2d at 164).

[14]*Martinez*, 64 F.3d at 173.

[15]*Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995); *see also Villa*, 895 F.2d at 1021 (The court is not to reweigh the evidence, try the issues *de novo*, or substitute its judgment for that of the Commissioner.).

[16]*Martinez*, 64 F.3d at 174.

[17]*Id*.

[18]42 U.S.C. § 1382(a)(1) & (2).

"disabled" or "disability" means the inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."[19]  A claimant shall be determined to be disabled only if her physical or mental impairment or impairments are so severe that he is unable to not only do her previous work, but cannot, considering her age, education, and work experience, participate in any other kind of substantial gainful work which exists in significant numbers in the national economy, regardless of whether such work exists in the area in which the claimant lives, whether a specific job vacancy exists, or whether the claimant would be hired if he applied for work.[20]

**2. Evaluation Process and Burden of Proof**

Regulations set forth by the Commissioner prescribe that disability claims are to be evaluated according to a five-step process.[21]  A finding that a claimant is disabled or not disabled at any point in the process is conclusive and terminates the Commissioner's analysis.[22]

The first step involves determining whether the claimant is currently engaged in substantial gainful activity.[23]  If so, the claimant will be found not disabled regardless of her medical condition or her age, education, or work experience.[24]  The second step involves determining whether the

---

[19] 42 U.S.C. § 1382c(a)(3)(A).

[20] 42 U.S.C. § 1382c(a)(3)(B).

[21] 20 C.F.R. §§ 404.1520 and 416.920.

[22] *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995).

[23] 20 C.F.R. §§ 404.1520 and 416.920.

[24] *Id*.

claimant's impairment is severe.[25] If it is not severe, the claimant is deemed not disabled.[26] In the third step, the Commissioner compares the severe impairment with those on a list of specific impairments.[27] If it meets or equals a listed impairment, the claimant is deemed disabled without considering her age, education, or work experience.[28] If the impairment is not on the list, the Commissioner, in the fourth step, reviews the claimant's residual functional capacity and the demands of her past work.[29] If the claimant is still able to do her past work, the claimant is not disabled.[30] If the claimant cannot perform her past work, the Commissioner moves to the fifth and final step of evaluating the claimant's ability, given her residual capacities, age, education, and work experience, to do other work.[31] If the claimant cannot do other work, he will be found disabled. The claimant bears the burden of proof at the first four steps of the sequential analysis.[32] Once the claimant has shown that he is unable to perform his previous work, the burden shifts to the Commissioner to show that there is other substantial gainful employment available that the claimant is not only physically able to perform, but also, taking into account his exertional and

---

[25]*Id.*

[26]*Id.*

[27]*Id.*

[28]*Id.*

[29]*Id.*

[30]*Id.*

[31]*Id.*

[32]*Leggett*, 67 F.3d at 564.

nonexertional limitations, able to maintain for a significant period of time.[33] If the Commissioner adequately points to potential alternative employment, the burden shifts back to the claimant to prove that he is unable to perform the alternative work.[34]

**B. Findings and Conclusions of the ALJ**

In the instant case, the ALJ reached his decision at step four of the evaluation process. At step one, the ALJ determined that Lopez has not worked at a level constituting substantial gainful activity since her alleged onset date.[35] At step two, the ALJ determined that Lopez has medically determinable impairments due to heart arrhythmia status post pacemaker implantation and right shoulder tendinitis.[36] The ALJ characterized these impairments as severe.[37] At step three, the ALJ found that Lopez's impairments, either singly or in combination, are not severe enough to meet, medically equal or functionally equal one of the impairments listed in 20 C.F.R., Part 404, Subpart P, Appendix 1 (Appendix 1).[38] At step four, the ALJ found that Lopez retains the residual functional capacity to perform light work that does not involve climbing ropes, ladders or scaffolds or which requires overhead work with the dominant right upper extremity.[39] The ALJ determined that Lopez can lift and carry 20 pounds occasionally and 10 pounds frequently,

---

[33]*Watson v. Barnhart*, 288 F.3d 212, 217 (5th Cir. 2002).

[34]*Anderson v. Sullivan*, 887 F.2d 630, 632-33 (5th Cir. 1989).

[35]SSA record, pp. 21 & 26.

[36]*Id*. at p. 24.

[37]*Id*.

[38]*Id*.

[39]*Id*. at p. 27.

stand/walk 6 hours of an 8-hour day with normal breaks, and sit 6 hours out of an 8-hour day with normal breaks.[40]  The ALJ further determined that Lopez can perform her past relevant work as a cashier and as a pizza parlor supervisor.[41]  Because he determined that Lopez can perform her past relevant work, the ALJ concluded that Lopez not disabled as defined in the Act.[42]

**C. Lopez's Allegation of Error**

Lopez quarrels only with the ALJ's treatment of her allegation about chest pain, fatigue and shortness of breath in determining her residual functional capacity.[43]  Lopez contends that the ALJ's credibility assessment focuses on her arrhythmia and ignores her complaints about chest pain, fatigue and shortness of breath.  Lopez maintains that the ALJ failed to consider how these symptoms affect her ability to work.

When a claimant complains about symptoms such as pain, fatigue, shortness of breath, weakness, or nervousness, the SSA's regulations require the ALJ to first determine whether "an underlying medically determinable physical or mental impairment(s) [exists] . . . that could reasonably be expected to produce the individual's pain. . . ."[44]  Here, the ALJ did not question that Lopez's heart condition is a medically determinable impairment that could reasonably be expected to produce chest pain, fatigue and shortness of breath.  If the ALJ finds that an impairment exists that could reasonably be expected to produce the individual's symptoms, the

---

[40]*Id.*

[41]*Id.*

[42]*Id*. at p. 27.

[43]Docket entry # 17, p. 7.

[44]Social Security Reg. 96-7p, *available* at www.ssa.gov.

ALJ must then "evaluate the intensity, persistence, and limiting effects of the individual's symptoms to determine the extent to which the symptoms limit the individual's ability to do basic work activities."[45]  In this case, the ALJ evaluated the medical evidence and determined that no medical evidence supports Lopez's allegations that chest pain, fatigue and shortness of breath prevent her from doing light work.  My review of the record supports that determination.

During Lopez's hearing, Lopez's representative argued that Lopez is disabled due to arrhythmia that her doctor has been unable to control.[46]  Arrhythmia is a "loss of, or variation in, the normal rhythm of the heart beat."[47]  A pacemaker was placed in Lopez's heart in 1998 to initiate and regulate her heart beat.  The most recent pacemaker check in Lopez's record shows that her pacemaker is pacing and sensing appropriately.[48]

When the ALJ questioned Lopez about why she cannot work, Lopez answered with the following complaints:  she can't stand for a long time,[49] she can't sit for a long time,[50] she has a herniated disk in her back,[51] her legs go numb and she gets cramps in her legs when she sits,[52] she

---

[45]*Id*.

[46]SSA record, pp. 423-4.

[47]J.E. SCHMIDT, M.D., ATTORNEY DICTIONARY OF MED. T-A-10303 (Matthew Bender 2005).

[48]SSA record, p. 268-9.

[49]*Id*. at p. 427.

[50]*Id*.

[51]*Id*.

[52]*Id*.

has a bone spur on her right arm,[53] she gets heart palpitations when she stands or bends a lot or turns around fast,[54] her fingers get cramped,[55] she experiences pain in her hands and shoulder,[56] she gets headaches,[57] she has anxiety attacks,[58] she experiences chest pain a few times a month,[59] she sometimes experiences dizziness and loss of balance,[60] and she can't breathe when she gets chest pain.[61]  Although Lopez contends that the ALJ focused exclusively on her arrhythmia in considering how her symptoms limit her ability to work, the ALJ considered all of Lopez's symptoms.  The ALJ specifically addressed Lopez's allegations of dizzy spells, blurred vision, heart palpitations, numbness in her legs from cardiac arrhythmia, back pain, pain in her hand and shoulder from a bone spur in her right arm, headaches, anxiety, and chest pain.[62]  After reviewing Lopez's medical records, the ALJ found that the "only new impairment since the alleged onset date of disability [was Lopez's] heart condition."[63]  Responding to Lopez's representative's

---

[53]*Id*. at p. 429.

[54]*Id*. at p. 429.

[55]*Id*.

[56]*Id*.

[57]*Id*. at p. 431.

[58]*Id*.

[59]*Id*.

[60]*Id*.

[61]*Id*. at p. 432.

[62]*Id*. at pp. 25-26.

[63]*Id*. at p. 26.

argument that Lopez is disabled due to arrhythmia that her doctor has been unable to control,[64] the ALJ discussed how the argument is contradicted by Lopez's medical record.[65] Lopez's medical record shows the following.

Lopez's alleged onset date—October 10, 2003—is the day Lopez presented to University Hospital emergency room, complaining about chest pain.[66] Lopez was diagnosed with pericarditis and treated with indomethacin.[67] Pericarditis is the "[i]nflammation of the pericardium, the double-walled sac which surrounds the heart."[68] Indomethacin is a nonsteroidal anti-inflammatory agent.[69] Lopez's chest pain and breathing improved with treatment and Lopez was discharged from the hospital four days later.[70]

At the time of her hospitalization, Lopez worked as a cashier at a barbeque restaurant.[71] Lopez, however, did not return to work. Instead, she was admitted to Christus Santa Rosa Hospital on November 4, 2003, complaining about chest pain and shortness of breath.[72] An

---

[64]*Id*. at pp. 423-4.

[65]*Id*. at p. 26.

[66]*Id*. at p. 136.

[67]*Id*. at p. 137.

[68]J.E. SCHMIDT, M.D., ATTORNEY DICTIONARY OF MED. P-3587 (Matthew Bender 2005).

[69]*See id*. at p. I-1651.

[70]SSA record, pp. 137-41.

[71]*Id*. at p. 72.

[72]*Id*. at p. 158.

echocardiogram showed a large pericardial effusion.[73]  A pericardial effusion is an "accumulation of fluid in the space between the inner layer and the outer layer of the pericardium, the double-walled sac which surrounds the heart."[74]  To remedy this condition, Lopez underwent a pericardial window on November 6, 2003.[75]  A pericardial window is a "procedure in which an opening is made in the pericardium to drain fluid that has accumulated around the heart."[76]  Although Lopez hasn't had regular access to a treating physician since that time—she no longer has medical insurance—her medical records do not show any significant problems from arrhythmia.[77]

In contrast to Lopez's allegation that chest pain, fatigue and shortness of breath prevent her from working, the record includes a residual functional capacity assessment, dated January 29, 2004, reporting the following: Lopez can occasionally lift 50 pounds and frequently lift 25 pounds;[78] Lopez can stand/walk for 6 hours in an 8-hour workday;[79] she can sit for 6 hours in an 8-hour workday;[80] she is unlimited in the ability to push/pull, other than limitation indicated for

---

[73]*Id*. at p. 160.

[74]J.E. SCHMIDT, M.D., ATTORNEY DICTIONARY OF MED. P-3540 (Matthew Bender 2005).

[75]SSA record, p. 163.

[76]University of Southern California Keck School of Medicine, Patient's Guide, *available on line at* http://www.cts.usc.edu/zglossary-pericardialwindow.html; click on Glossary of Terms.

[77]*See* SSA record, p. 268 (pacemaker pacing and sensing appropriately on July 21, 2004), p. 349. (radiology report dated August 26, 2004, reports no acute findings where patient complained of chest pain), & p. 230 (normal chemical stress myocardial perfusion study on August 5, 2005).

[78]SSA record, p. 181.

[79]*Id*.

[80]*Id*.

lifting/carrying;[81] Lopez has no postural, manipulative, or visual limitations;[82] and Lopez's allegations of limited function are not fully supported by medical records.[83] The record also includes a residual functional capacity questionnaire by a physician who treated Lopez in the past—Dr. Lawrence Widman. In that assessment, dated September 30, 2005, Dr. Widman reported that Lopez does not have a marked limitation of physical activity, as demonstrated by fatigue, palpitation, dyspnea, or anginal discomfort on ordinary physical activity.[84] Dr. Widman opined that Lopez can tolerate high stress work and that she performs at a high level when her heart rate is normal.[85] Dr. Widman, however, also opined that fatigue—as a side-effect of medication—interferes with Lopez's ability to work, requiring Lopez to take several unscheduled breaks during an 8-hour day and causing her to miss work twice a month.[86] The ALJ rejected the latter opinion because it is unsupported by the clinical findings, treatment notes and the record as a whole.[87] The ALJ specifically noted that Lopez worked during the time period covered by Dr. Widman's treatment notes, first as a full-time cook supervisor and then as a restaurant cashier.[88] Lopez did not complain about fatigue during her hearing and she does not challenge the ALJ's

---

[81]*Id.*

[82]*Id.* at pp. 182-3.

[83]*Id.* at p. 185.

[84]*Id.* at p. 285.

[85]*Id.*

[86]*Id.* at p. 187.

[87]*Id.* at p. 26.

[88]*Id.*

consideration of Dr. Widman's opinion.

In addition to the residual functional capacity assessment and Dr. Widman's assessment, a medical expert testified during the hearing that Lopez has not had any significant problems due to cardiac arrhythmia and that Lopez's pacemaker has not turned on very often.[89]  The medical expert opined that Lopez is capable of light work with no overhead work with the right arm.[90]

This evidence—the January 2004 residual functional capacity assessment; Dr. Widman's opinion that Lopez does not have a marked limitation of physical activity, as demonstrated by fatigue, palpitation, dyspnea, or anginal discomfort on ordinary physical activity; and the medical expert's testimony—constitutes substantial evidence supporting the ALJ's determination that Lopez is capable of performing light work and that she can perform her past relevant work as a cashier and pizza parlor supervisor.  In addition, the ALJ properly considered Lopez's complaints about chest pain, shortness of breath and fatigue.

## Recommendation

Substantial evidence supports the ALJ's decision that Lopez is not disabled and the ALJ did not make an error of law.  I recommend that Lopez's request for relief (docket entry # 3) be DENIED and that the Commissioner's decision denying Lopez DIB and SSI benefits be AFFIRMED.

## Instructions for Service and Notice of Right to Object/Appeal

The United States District Clerk shall serve a copy of this memorandum and recommendation on all parties by either (1) electronic transmittal to all parties represented by

---

[89]*Id*. at p. 435.

[90]*Id*. at. p. 436.

14

attorneys registered as a "Filing User" with the Clerk of Court, or (2) by mailing a copy to those not registered by certified mail, return receipt requested.  Written objections to this memorandum and recommendation must be filed within 10 days after being served with a copy of same, unless this time period is modified by the district court.[91]  **Such party shall file the objections with the Clerk of the Court, and serve the objections on all other parties and the magistrate judge.**  A party filing objections must specifically identify those findings, conclusions or recommendations to which objections are being made and the basis for such objections; the district court need not consider frivolous, conclusive or general objections.  A party's failure to file written objections to the proposed findings, conclusions and recommendations contained in this report shall bar the party from a *de novo* determination by the district court.[92]  Additionally, failure to file timely written objections to the proposed findings, conclusions and recommendations contained in this memorandum and recommendation shall bar the aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court.[93]

**SIGNED** on January 28, 2008.

*Nancy Stein Nowak*
NANCY STEIN NOWAK
UNITED STATES MAGISTRATE JUDGE

---

[91] 28 U.S.C. §636(b)(1); Fed. R. Civ. P. 72(b).

[92] *Thomas v. Arn*, 474 U.S. 140, 149-152 (1985); *Acuña v. Brown & Root, Inc.*, 200 F.3d 335, 340 (5th Cir. 2000).

[93] *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996).